FILED

2017 Dec-20  PM 10:39
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | | |
|---|---|---|
| **DANA COOPER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NUMBER:** |
| | ) | **6:16-CV-01746-TMP** |
| **WALKER COUNTY E-911,** | ) | **OPPOSED** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## PLAINTIFF'S MEMORANDUM BRIEF IN SUPPORT OF HER MOTION FOR PARTIAL SUMMARY JUDGMENT

Respectfully submitted,


/s/Charles C. Tatum, Jr. (ASB-1703-T77C)
*/s/Seth L. Diamond* (ASB-4102-H54D)
Attorneys for Plaintiff
Charles C. Tatum, Jr. P.C.
Post Office Box 349
Jasper, Alabama 35502
Phone:  (205) 387-0708
Ctatum7@aol.com
sethdiamond@sethdiamondlaw.com

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS …………………………………………………..2

STATEMENT OF FACTS …………………………………………….....3

SUMMARY JUDGMENT STANDARD ……………………….………9

ARGUMENT ……………………………………………………………..12

CONCLUSION …………………………………………………………...17

CERTIFICATE OF SERVICE ………………………………………19

Comes Now the plaintiff Dana Cooper, by and through her attorneys of record, Charles C. Tatum, Jr. and Seth L. Diamond, and pursuant to Rule 56 of the *Federal Rules of Civil Procedure* files this memorandum brief in support of her motion for summary judgment on Counts V and VI of her amended complaint.

## PLAINTIFF'S UNDISPUTED FACTS

1.     Defendant Walker County E-911 (hereinafter E-911) is an agency of the State of Alabama created by statute Ala. Code (1975) § 11-98-2 et. seq. and provides emergency communication services within Walker County, Alabama. (Def. Ans. Doc. 3 at ¶4).

2.     Plaintiff, Dana Cooper (hereinafter Cooper) was hired by E-911 on September 1, 2009 and worked as a dispatcher until her termination on October 2, 2014.  (Def. Ans. doc. 3 at ¶6, E-911 Bates doc. 0012, 0029).

3.     Cooper was hired by E-911 director Roger Wilson (Wilson).  At the time of her hire Wilson told her she was on probationary status for first 90 days of her employment where she could be fired for any or no reason.  After her probationary period, she would become a permanent employee and E-911 would follow a progressive discipline where she could only be fired for good cause and having received four warnings for the same misconduct or infraction.  (Cooper Aff. ¶4-6, Walden Dep. 30:7-31:16).

3

4.     The Corporate Representative for E-911 and chairman of the Board of Directors, Tim Stockman, confirmed that permanent employees of can only be terminated for good cause.  (Stockman Dep. 59:2-12).

5.     Cooper completed her probationary period and became a permanent employee of E-911. (Cooper Aff. ¶7).

6.     At the time of her hire and periodically thereafter, Cooper was given an employee handbook.  (E-911 Bates doc. 006, 007, Walden Dep. 85:18-20, Ex. 1).

7.     Contained within the employee handbook is a procedure outlining defendant's (hereinafter E-911's) disciplinary and grievance procedures (Walden Dep. 85:18-20, Ex. 1).

8.     Pursuant to E-911's handbook, a dismissal is reserved for instances involving extreme neglect of duty, conduct unbecoming an employee, or extreme or continued violation of the rules. (Walden Dep. 85:18-20, Ex. 1).

9.     In past 30 years, the most extreme infraction involving dereliction of duty to occur at E-911 involved a dispatcher who had failed to alert emergency response units to the scene of an injured man who had been blown off a roof during a storm.  This dispatcher that committed this life endangering infraction was not fired. Instead, she was only given a written reprimand. (Walden Dep. 37:1-47:5).

10.     Under the E-911 grievance procedure, employees, like Cooper, are accorded a process for challenging adverse decisions of their supervisors regarding personnel matters. (Walden Dep. 84:24-93:17, Ex. 1).

11.     To activate this process, employees are instructed to submit a written statement describing their personnel matter to the E-911 director, who in turn is instructed to provide the employee with a written response within five (5) working days. Further, under the handbook, employees are granted the right to be represented by any person of their choosing at any stage of this process (Walden Dep. 84:24-93:17, Ex. 1).

12.     An employee who is dissatisfied with the response provided by the director may appeal the decision to the Walker County E-911 Board of Directors. (Walden Dep. 84:24-93:17, Ex. 1).

13.     The Board of Directors for E-911 are vested with the authority to conduct a hearing, interview witnesses, review documents and records, and to overturn the decision of the director on any personnel matter.  (Walden Dep. 84:24-93:17, Ex. 1 pg. 93, Ex. 1, Stockman Dep. 56:1-57:14).

14.     On August 26, 2014 Cooper requested unpaid leave under the FMLA for a medically qualified chronic condition, which included seizures, headaches, nausea, and vomiting.  Cooper's physician Dr. Anitra Batie provided E-911 with medical certification where she estimated her condition would last for a period of 6

weeks from August 26, 2014 until October 13, 2014, depending on her treatment and severity of symptoms.

15.     Dr. Batie certified Cooper for a single continuous period of leave and a reduced work schedule of one day off per week.  (Walden Dep. 97:10-106:23, Ex. 3).

16.     In response to Cooper's request, on September 3, 2014, E-911 director Wilson provided Cooper with a notice of eligibility approving her for 12 weeks of unpaid FMLA leave for her certified chronic medical condition.  (Walden Dep. 102:19-106:23, 117:10-123:8, Walden Declaration Ex-J).

17.     From August 26, 2014 through September 10, 2014 Cooper remained on continuous unpaid FMLA leave, and attempted to return to work on September 11, 2014. (Walden Dep. 125:11-128:15, Ex. 4).

18.     On September 30, 2014, while working her rotation Cooper began to experience a flare of symptoms, related to her medically qualified condition, of retching, nausea, and vomiting and asked her supervisor Chamness to leave early. (Walden Dep. 140:5-141:10).

19.     Despite Chamness could hear Cooper previously gagging and retching in the bathroom next to the dispatch area, she questioned Cooper why she needed to go home early.  Cooper answered because she was sick. (Walden Dep. 141:5-25).

20.     Chamness told Cooper she needed to have a doctor's excuse when she returned, and Cooper stated that was fine.  (Walden Dep. 143:14-24).

21.     Cooper stated to Chamness that was not the policy but okay.   To prove that she was right, Chamness made Cooper wait while she photo-copied a page from the employee handbook, highlight specific wording, and handed it to Cooper who was waiting for her permission to leave. Cooper was keeping the volume of her voice to a minimum so as to not interfere with her co-workers.  (Walden Dep. 145:7-146:5, 154:7, Cooper Aff. ¶11).

22.     While the handbook states the director has discretion to require a doctor's excuse for someone who calls-off prior to their shift, the handbook does not require a doctor's excuse when an employee requests to leave early due to an illness. (Walden Dep. 147:14-148:21).

23.     Cooper told Chamness she would do whatever she had to do, left the work area, and entered the kitchen to gather her belongings before she exited the building.  Chamness followed Cooper into the kitchen to engage in an argument with Cooper.   Cooper was not belligerent, loud, or say anything inappropriate to Chamness. (Walden Dep. 168:3 – 171:12, Cooper Aff. ¶10).

24.     After Cooper left the building, Chamness was incensed and instructed the other employees who were working on the shift to write a statement against Cooper.  (Walden Dep. 171:20-176:16).

25.     There are cameras with microphones located in the E-911 dispatch room that continuously record the work area and are sensitive enough to pick-up sounds from the adjacent kitchen/conference room area. (Walden Dep. 52:14-53:19).

26.     The cameras and microphone recorded the entire conversation that Cooper had with Chamness in the dispatch room and kitchen. While you can hear parts of what is being said by Cooper as she requested permission to go home because she was ill, Cooper kept her voice low during the entire conversation, as is evidenced by the recording of the incident. (Walden Dep. 52:14-53:19).

27.     The recording between Cooper and Chamness was reviewed the next day by the director Wilson and the administrations assistant Rhonda Walden (Walden) who decided to terminate Cooper.  (Walden Depo. 83:7-21).

28.     On October 2, 2014, E-911 director Roger Wilson called Cooper, who was schedule to be off from work, to his office.

29.     Wilson accused Cooper of being unable to perform her, told Cooper that her doctor had messed up her FMLA, and told Cooper she was fired for what happened the last day she worked and her inability to perform her job.  (Walden Dep. 128:25-129:14).

30.     Cooper attempted to provide Wilson with her doctor's excuse for having to leave work early, and insisted she had qualified leave under the FMLA, and was being treated unfairly for needing to leave her shift early by being told to

8

bring a doctor's excuse.  Wilson stated to Cooper that he did not need her doctor's excuse because she was fired, and that she was no longer on FMLA leave because her doctor screwed up the paperwork by returning her to work.  (Walden Dep.  93:18-94:13).

31.    October 9, 2014, Cooper filed a written grievance to E911, serving on the director Roger Wilson, stating she had been treated unfairly, that she was fired without just cause and that her rights under the FMLA, ADA and Section 504 were violated.  (Walden Dep. 85:25-86:1, Ex. 2).

32.    E-911 did not provide Cooper with a written response and did not provide Cooper a hearing on her discharge. (Walden Dep. 86:4-93:17).

## SUMMARY JUDGMENT STANDARD

Under Federal Rules of Civil Procedure 56, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The party requesting a summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any which it believes demonstrates the absence if a

genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, that the moving party support its own motion with affidavits or other similar materials negating the opponent's claim. *Id* at 323.

Once the moving party has met his burden, Rule 56 (c) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue of fact. *Celotex*, 477 U. S. at 324 (quoting Fed. R. Civ. P. *56* (e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Id* at 324. The plain language of Rule 56 mandates the entry of summary judgment, after adequate discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial. *Id* at 322.

After the defendant has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.

*56*. The substantive law will identify which facts are material and which are irrelevant. See *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242,248 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id* at 248. The judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Id* at 249. His guide is the same standard necessary to direct a verdict: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Id* at 251-52; see also *Bill Johnson's Restaurant, Inc. v. NLRB*, 461 U.S. 731, 746 n. 11 (1983) (indicating that the standard for summary judgment is substantively very close to that for motions for a directed verdict.) However, the nonmoving party must do more that show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenneth Radio Corp*., 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50 (citations omitted); accord *Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989).

Furthermore, the court must view the evidence presented through the prism of substantive evidentiary burden, so there must be sufficient evidence on which the jury could reasonably find for the Plaintiff. *Anderson* 477 U.S. at 254; *Cottle v. Stoner Communication, Inc*.; 849 F.2d 570 (11th Cir. 1988). Nevertheless,

credibility determines, the weight of evidence, and the drawing of inferences from the facts are functions of the jury, and therefore, the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson,* 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. Clewiston*, 848 F.2d 1534, 1540 n. 12 (11th Cir. 1988).

## <u>ARGUMENT</u>

Cooper has a property interest in her continued employment with E-911 and was deprived of her due process rights under <u>Art. I Sec. 13</u> of the Alabama Constitution and the 14th Amendment of the U.S. Constitution secured <u>by 42 U.S.C. §1983</u> when she was terminated by her employer without being accorded any pre- or post-deprivation hearing.  Therefore, Cooper is entitled to summary judgment on Counts V (Violation of Due Process Clause of Alabama Constitution) and VI (Violation of Due Process Clause of 14th Amendment) of her amended complaint.

In ruling on procedural due process claims in employment cases, our courts have stated succinctly:

"Turning to Plaintiff's procedural due process claim related to his discharge, such requires a showing that he had a protected property interest in his continued employment. *See Board of Regents of State Colleges v. Roth*, 408

U.S. 564, 571, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). The Supreme Court has explained:

'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire' and 'more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.' [*Roth*, 408 U.S. at 577]. Such entitlements are, '"of course, ... not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."' *Paul v. Davis*, 424 U.S. 693, 709, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976) (quoting *Roth, supra*, at 577); *see also Phillips v. Washington Legal Foundation*, 524 U.S. 156, 164, 118 S. Ct. 1925, 141 L. Ed. 2d 174 (1998). *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756, 125 S. Ct. 2796, 162 L. Ed. 2d 658 (2005). In practice, this means that the plaintiff must point to some state statute, regulation, ordinance, express or implied contract, or some other mutually explicit understanding that establishes that the claimed benefit cannot be withdrawn except for "cause." *See Barnes v. Zaccari*, 669 F.3d 1295, 1303 (11th Cir. 2012); *see also Ross v. Clayton County, Ga*., 173 F.3d 1305, 1307 (11th Cir. 1999). *Cf.* Heard v. Hannah, 51 F. Supp. 3d 1129, 1138-39 (N.D. Ala. 2014).

There is overwhelming evidence Cooper possessed a property right in her continued employment with E-911 and could not be terminated at-will. When Cooper was hired by Wilson she was told that after her probationary period she would be a permanent employee and could only be fired for cause. She was also told by Wilson that E-911 follows a progressive disciplinary policy and would not be discharged unless she received more than four reprimands for the same infraction of misconduct. However, and most significant, E-911's Corporate Representative and chairman of the board testified under oath that it was the policy of E-911 that its employees could not be terminated without good cause. Cooper accepted these terms as a condition of employment with E-911 and successfully completed her probationary period becoming a permanent employee until she was fired on October 2, 2014.

As further evidence of Cooper's property right in her continued employment, upon her hire she was given an employee handbook that prescribes a process for aggrieved employees to contest any personnel matter to the director of operations and to appeal the director's decision to board of directors. According to the handbook, employees are granted the right to be represented by any person of their choosing during this process and may be granted a hearing before the board of directors. The board of directors are vested with supervisory authority and may

conduct a hearing, interview witnesses, review documents and records, and over-turn any personnel decision made by the operational director.

Because Cooper possessed a property right in her continued employment, she was entitled to due process and to be given notice of the charges against her and an opportunity to respond before she was fired (to serve as "an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Harrison* at 545).   Cooper, however, was not given any due process either before or after a decision was made to terminate her employment.

Wilson and Walden made the decision to terminate Cooper on October 1, 2014. Cooper was called into Wilson's office on October 2, 2014 and was told that she was fired.  Cooper replied that she was on FMLA unpaid leave. Wilson replied that her doctor screwed up the paperwork and was no longer on leave.   Prior to being terminated on October 2, 2014, Cooper had not received any notice of the charges against her or an opportunity to respond.   Further on October 9, 2014, Cooper submitted a written grievance to Wilson informing him that she had been treated unfairly by having been fired without just cause and that her rights under the law had been violated; Wilson, however, ignored the grievance.   Cooper was not provided with any post-termination notice of the charges against her or given a hearing where

she could present evidence on her own behalf, and she was deprived of the opportunity to be represented by any person of her choosing.

Since Cooper had a property interest in her continued employment with E-911 and her due process rights were violated, the relief accorded to her under the law is reinstatement, backpay, and an award of attorney's fees[1].

"The proper remedy under § 1983, however, is to return the plaintiffs to the position in which they would have been if the violation of their rights had not occurred. *Garrett v. Mathews*, 474 F. Supp. 594 (N.D. Ala. 1979). Without a hearing of some sort, the plaintiffs could not have been terminated. *Cleveland Bd. of Educ. v. Loudermill, supra*. Because the trial court found that the denial of due process began at the Personnel Board hearing, the remedy of reinstatement and back pay appropriately places the plaintiffs in the position they were in before the violation of their rights occurred." *Cf.* Huntsville v. Biles, 489 So. 2d 509, 515 (Ala. 1986).

See also Wyatt v. Bronner, 500 F. Supp. 817 (M.D. Ala. 1980), "cases where "classified" employees are discharged without a pre-termination hearing, courts hold that they have been denied a constitutional right to be heard prior

---

[1] "a prevailing plaintiff may be awarded reasonable attorney fees based on a substantial, unaddressed constitutional claim, if that claim is reasonably related to the ultimate success." Fed'n of City Emps. v. Birmingham, 492 So. 2d 1304, 1306 (Ala. 1986). 42 U.S.C.§1988.

to discharge and are entitled to back pay. . . even if the post-termination hearing results in a final adjudication that the discharged employees were discharged for good cause." Glenn v. Newman, 614 F.2d 467 (5th Cir. 1980); Thompson v. Bass, 616 F.2d 1259 (5th Cir. 1980).  Wyatt v. Bronner, 500 F. Supp. 817, 822 (M.D. Ala. 1980).

See also Enter. Fire Fighters' Ass'n v. Watson, 869 F. Supp. 1532 (M.D. Ala. 1994), holding "[b]ecause Davis had a right not to be terminated prior to "some kind of a hearing," he had a right not to be removed from the payroll until a hearing was held and a decision reached." 869 F. Supp. 1532, 1542 (M.D. Ala. 1994).

Therefore, because Cooper was wrongfully deprived of her constitutional rights to procedural due process, she is entitled to reinstatement of her position as a dispatcher, back-pay since the date of her termination of October 2, 2014, and for an award of a reasonable attorney's fee.

## CONCLUSION

There is overwhelming evidence that, Cooper possessed a property interest in her continued employment with Walker County E-911 where she could only be terminated for just cause.  Further, Cooper could not be deprived of this interest without procedural due process.  The evidence is undisputed that Cooper was

terminated without having been provided any pre- or post-termination hearing. Therefore, Cooper's due process rights under the Alabama Constitution and the U.S. Constitution were violated for which she is entitled to relief in the form of reinstatement as a dispatcher, back pay, and an award of a reasonable attorney's fee.

**WHEREFORE**, these premises considered, plaintiff moves for summary judgment on Counts V and VI of her amended complaint.

Respectfully submitted,

/s/Charles C. Tatum, Jr. (ASB-1703-T77C)
*/s/Seth L. Diamond* (ASB-4102-H54D)
Attorneys for Plaintiff
Charles C. Tatum, Jr. P.C.
Post Office Box 349
Jasper, Alabama 35502
Phone:  (205) 387-0708
Ctatum7@aol.com
sethdiamond@sethdiamondlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of December, 2017 I electronically filed the foregoing with the clerk of the court using the CM/ECF system, which will send notification of such filing to the following:

J. MICHAEL COOPER (ASB-6353-P79J)
Porterfield, Harper, Mills, Motlow & Ireland, P.A.
22 Inverness Center Parkway, Suite 600
Birmingham, AL  35242
Telephone: (205) 980-5000
Facsimile: (205) 980-5001
Email:  jmc@phm-law.com

/s/Seth L. Diamond
Of Counsel